Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2839 | **DATE** | 12/24/2002 |
| **CASE TITLE** | Guerra vs. Illinois State Police | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  **ENTER MEMORANDUM OPINION:** Defendant's motion (Doc 33-1) for summary judgment is denied. Joint pretrial order to be filed by February 18, 2003.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 2 6 2002 | |
| | Notified counsel by telephone. | | date docketed | 46 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | 02 DEC 24 PM 12:46 | | |
| SCT | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | mailing deputy initials |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

FRANK GUERRA,  )
  )
      Plaintiff,  )
  )
vs.  )  01 C 2839
  )
ILLINOIS STATE POLICE and THE STATE OF  )
ILLINOIS,  )
  )
      Defendants.  )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter is before the Court on Defendant Illinois State Police's motion for summary judgment. For the reasons set forth below, this motion is denied.

## BACKGROUND

Plaintiff Frank Guerra, a Hispanic male whose national origin is Mexican, is employed by the Illinois State Police ("ISP") as a Master Sergeant. Guerra was assigned to the District of Chicago and detailed to the Metropolitan Enforcement Group of Cook County as an Area Supervisor from April 1993 through December 1998. Guerra then transferred to District 15 as a Master Sergeant in Patrol. During August and September 1999, the ISP promoted eleven Master Sergeants to the position

of Lieutenant. Of the five officers promoted from Region I, only one was higher ranked on the promotion list than Guerra. None of the promoted officers were Hispanic or of Mexican national origin. The ISP rules governing promotions state that all the candidates ranked in the top ten are equally eligible for promotion. Promotions do not have to be made according to rank and often the promotions do not directly coincide with the applicants' rank. Guerra alleges that the ISP did not promote him because of his race and national origin. Guerra alleges that further discrimination against him occurred in the spring of 1999, when he applied for a training opportunity at the Southern Police Institute and that training position was granted to a non-Hispanic male not eligible for promotion to Lieutenant. On November 11, 1999, Guerra filed a complaint with the EEOC, alleging discrimination based on race and national origin. On January 23, 2001, the EEOC issued a Notice of Right to Sue authorizing the Plaintiff to sue the ISP in federal court. On August 31, 2001, this court dismissed Guerra's claims based on alleged discrimination occurring outside the limitations period. This court also dismissed claims against the State of Illinois and Guerra's retaliation claim. Guerra filed a two-count amended complaint on September 4, 2001. Only the first count, which alleges discrimination on the basis of race and national origin in the conditions and privileges of employment in violation of 42 U.S.C. § 2000 *et seq.*, is currently before this Court.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In employment discrimination cases, we apply this standard with "added rigor" before granting summary judgment. *Mills v. Health Care Service Corp.*, 171 F.3d 450, 454 (7th Cir. 1999). The moving party bears the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 312 (1986). This burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the nonmoving party's case." *Id.* Once the movant has met this burden, the non-moving party cannot rest on the allegations in the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue exists when "the evidence is such that a reasonable jury could find for the nonmoving party." *Anderson*, 477 U.S. at 248; *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole in a light most favorable to the non-moving party and draw all reasonable

inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). With these principles in mind, we turn to the motion before us.

## DISCUSSION

Where an employer in a Title VII case brings a motion for summary judgment the plaintiff has two approaches that can be used to defeat the motion. Under the "direct" approach, the plaintiff can show through direct or circumstantial evidence that the alleged harmful action of the employer was "motivated by an impermissible purpose, such as her race or national origin." *Pafford v. Herman*, 148 F.3d 658, 665 (7th Cir. 1998). Under the "indirect" approach the plaintiff must establish a prima facie case which will allow an inference of discrimination. *Id.* If a prima facie case is established then there is a rebuttable presumption of discrimination and the employer is required to offer a "legitimate, non-discriminatory reason for the adverse employment action." *Cianci v. Pettibone Corp.*, 152 F.3d 723, 726 (7th Cir. 1998). If the employer provides such a reason the plaintiff must then show that the reason alleged by the employer is merely a pretext for discrimination. *Id.*

I. Title VII Direct Approach

Guerra claims that he has sufficient evidence to proceed under the direct approach. A plaintiff can defeat a summary judgment motion in a Title VII action

-4-

using the direct approach "by putting in enough evidence, whether direct or more commonly circumstantial, to create a triable issue of whether the adverse employment action of which he complains had a discriminatory motivation . . . ." *Wallace II v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1397 (7th Cir. 1997). According to Guerra the command at ISP held stereotypes concerning Hispanics. He points to a belief by a Lieutenant Snyder that Guerra was "essentially a street agent." However, Guerra does not provide evidence to show that such a belief was based on Guerra's national origin. Guerra also refers to an affidavit signed by Carlos Hevia ("Hevia"), a former commander at the ISP. The affidavit states generally that Hevia thought he was treated unfairly while working for the ISP. Hevia also claims that Guerra performed his job well and that Hevia was told to fix Guerra's evaluation scores to prevent his promotion. In addition, Hevia states generally that the "command structure" of the ISP is prejudiced against Hispanics and that he observed throughout his career that the animus existed. Hevia's general opinion that the command structure at the ISP has an anti-Hispanic animus is of little evidentiary value. In places Hevia's affidavit lacks the specific facts necessary to back up some of his generalized accusations and it is not clear from the accusations in the affidavit whether all the alleged wrongful conduct directed against him was based on a hostility towards his Hispanic ancestry. Also, whether the ISP command structure held an animus for Hispanics years ago when

Hevia started on the force as the affidavit indicates is of minimal relevance. Guerra offers a variety of other evidence such as that an acting Hispanic Lieutenant was not promoted and that certain command officers never recommended a Hispanic candidate for promotion. Guerra also points to statistics regarding the number of Hispanics promoted to Lieutenant since 1994, the ISP mission statement, and other evidence. However, the evidence provided by Guerra is not sufficient to defeat the motion for summary judgment under the direct approach. Therefore, Guerra must proceed under the indirect approach.

## II. Title VII Indirect Approach

Guerra is Hispanic and there is no indication that he was not meeting his employer's legitimate expectations or that he was not qualified for the Lieutenant position. He suffered an adverse employment action when he was not promoted. ISP concedes that Guerra can establish a prima facie case under the indirect approach, but argues that it has presented a legitimate non-discriminatory reason and Guerra has not shown that reason to be a pretext. To show a pretext the plaintiff must establish that the given reason is a lie made by the employer to conceal its unlawful discriminatory intentions. *Hasham v. California State Bd. of Equalization*, 200 F.3d 1035, 1045 (7th Cir. 2000) (stating that the focus is on whether the employer intended to lie and that it is not relevant whether the given reason is ultimately found to be sound). A plaintiff

can show a pretext by presenting "direct evidence that a discriminatory reason motivated the employer's decision or by presenting evidence that the employer's proffered reason is unworthy of credence, thus raising the inference that the real reason is discriminatory." *Essex v. United Parcel Service, Inc.*, 111 F.3d 1304, 1310 (7th Cir. 1997).

Also, the Seventh Circuit has recently addressed the pretext analysis in *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180-81 (7th Cir. 2002). In *Millbrook* the court held that, where an employer presents as its legitimate non-discriminatory reason for not promoting a plaintiff that the employer promoted the best qualified applicant, the qualifications of the chosen individual and the plaintiff are not evidence of pretext except where the "differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified." *Id.* (quoting *Deines v. Texas Dept. of Protective and Regulatory Services*, 164 F.3d 277 (5th Cir. 1999)). Stated another way, the qualifications are not evidence of pretext unless the "plaintiff's credentials are so superior that no reasonable person" could have chosen the other person over the plaintiff. *Id.*

Guerra's response to this argument is that ISP has not met its burden of presenting a legitimate non-discriminatory reason. All of the promotion recommendations in question indicate that one reason that the applicant was chosen

was that he or she was the best qualified individual. Guerra claims that this excuse is not true. Guerra claims that the best qualified candidates could not have been chosen because some of the promotion decision makers limited their search to their own region. However, we see no reason why decision makers could not neutrally choose from the best qualified applicants within a particular region. Such an approach would not necessarily diminish the likelihood that a Hispanic applicant would be chosen. In fact, in a region containing more Hispanic applicants than the overall average per region, the likelihood that a Hispanic officer would be promoted in that region is actually increased under this approach. Guerra argues at length that he was better qualified than each applicant chosen instead of him and ISP responds with a lengthy list of reasons why the other applicants were better or as qualified as Guerra. Guerra has not shown that his credentials were so superior that a reasonable impartial person could not choose the other applicants. Therefore, the qualifications of Guerra and the applicants chosen instead of him are not evidence of discrimination. *See id.* (stating that it is not a court's job to "act as a super personnel department that second guesses employers' business judgments."). However, Guerra offers other evidence besides the qualifications evidence that, when viewed in a light most favorable to Guerra, shows that the reasons given by ISP are pretextual. Hevia claims that while he was Guerra's supervisor in 1995, he was told by his supervisor Robert Johnson to limit Guerra's

performance appraisal rating to 75 because he had only been a Master Sergeant for a short period of time. Artificially manipulating evaluation scores is inconsistent with ISP's assertion that the ISP conducted its promotion process according to set procedures and it casts doubt on the veracity of the reasons given for promotions such as that the applicant was the best qualified.

ISP does not deny that Hevia was told to lower Guerra's score. ISP only claims that the statement is incomplete and points out that Hevia was told to lower Guerra's score because he had only been a Master Sergeant for a short period of time. ISP's response to Hevia's assertion that such artificial manipulation of evaluation scores was the standard procedure is that the statement is inadmissible because there is not a proper foundation. No federal rule of evidence requires a foundation. *A.I. Credit Corp. v. Legion Insurance Co.*, 265 F.3d 630, 637 (7th Cir. 2001) (stating that a foundation is merely a "loose term for preliminary questions designed to establish that evidence is admissible"). Under Local Rule 56.1, ISP is required to deny facts in Guerra's statement of additional facts or else the facts are deemed to be admitted. ISP must deny facts in a clear and definitive manner. An incomplete or evasive denial is not sufficient.

Clearly, Hevia's statement concerning the standard practice of manipulating evaluation scores is relevant and ISP's general assertion that the Hevia statement is

inadmissible is unsatisfactory. ISP offers no specific reason as to why the statement would be inadmissible and ISP did not deny the statement's truth. It is not this court's function at this time to make rulings on evidentiary objections in order to determine if the Hevia statement is admissible. We are satisfied that, based on the information before us, there appear to be avenues by which the evidence might be properly admitted. ISP has not sought to strike the Hevia affidavit and they have not properly denied Guerra's statement of additional facts which reiterates Hevia's claim that he was told to lower Guerra's score and that it was the standard practice to do so.

Also, a factual contention in a 56.1 statement of facts need not be admissible as long as it at least "represent[s] admissible evidence." *Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D. Ill. 2000). Besides the fact that Hevia was allegedly told by his superior to limit Guerra's performance appraisal rating to 75, it can be reasonably inferred from the affidavit evidence that Hevia actually limited Guerra's score. There is no indication in the affidavit that Hevia refused to obey his superior's orders and submitted a score above the proscribed limit. Thus, evidence that Hevia, a supervisor with the ISP who was involved in the promotion determination process, artificially adjusted evaluation scores is evidence that is relevant to pretext.

ISP argues that, even if Hevia was told to lower Guerra's score, Guerra ended up ranked in the top ten anyways and was therefore not disadvantaged. Whether or not

Guerra eventually ended up ranked in the top ten is not the point. Just because Guerra ended up making the top ten despite an arguable attempt to sabotage his rank and delay his promotion does not make the attempt meaningless. Neither does it remove the shadow of doubt cast over ISP's assertions that ISP made promotions according to set formal procedures and that the reasons given for the promotions were truly the reasons behind the promotions.

## CONCLUSION

We must conclude that the proffered evidence of pretext is sufficient to create a material issue of fact as to the bona fides of the decision-making process. Consequently, Defendant's motion for summary judgment is denied.

_____
Charles P. Kocoras
Chief Judge
United States District Court

Dated: DEC 2 4 2002